UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

OVELLA T.,

               Plaintiff,

        v.                                                                    **DECISION AND ORDER**
                                                                                                    20-CV-374S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

      1.      Plaintiff Ovella T.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security benefits under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed her application for benefits on December 21, 2016. (R.[2] at 517.) Plaintiff alleged disability beginning on August 26, 2016, due to depression, chronic pancreatitis, history of pulmonary embolism, and hypertension. (R. at 408-09.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Stephen Cordovani held a hearing on March 25, 2019, which Plaintiff did not attend, although her representative did. (R. at 390-406.) Vocational Expert Christina Boardman also appeared and testified by telephone. At the time of the hearing,

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff was 56 years old, with a high school education and prior work experience as a cafeteria worker and home aide. (R. at 407, 540.)

3.      The ALJ considered the case de novo and, on May 28, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 369-379.) On January 27, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on March 27, 2020, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 16, 18.)  Plaintiff filed a response on May 12, 2021 (Docket No. 19), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's May 28, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities.  If the claimant
suffers such an impairment, the third inquiry is whether, based
solely on medical evidence, the claimant has an impairment
which is listed in Appendix 1 of the regulations.  If the claimant
has such an impairment, the [Commissioner] will consider him
disabled without considering vocational factors such as age,
education, and work experience; the [Commissioner]
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful activity.
Assuming the claimant does not have a listed impairment, the
fourth inquiry is whether, despite the claimant's severe
impairment, he has the residual functional capacity to perform
his past work.  Finally, if the claimant is unable to perform his
past work, the [Commissioner] then determines whether there
is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.    Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided

into two parts. First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience. Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954,

76 L. Ed. 2d 66 (1983).

10.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful

activity since her alleged onset date of August 26, 2016. (R. at 371.) At step two, the ALJ

4

found that Plaintiff has the severe impairments of major depressive disorder and adjustment disorder with depressed mood. (Id.)

11.    The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 372.)

12.    Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that she

> can understand, remember and carry out simple instructions
> and tasks; able to work in a low stress work environment
> reflected by simple unskilled work, no supervisory duties, no
> independent decision-making, no strict production quotas,
> minimal changes in work routine and processes; occasional
> interaction with supervisor and co-workers and no or only
> incidental interaction with the general public.

(R. at 374.)

13.    At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 377.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 378.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 379.)

14.    Plaintiff argues that the ALJ's final determination is not supported by substantial evidence for the following reasons: (1) the ALJ failed to consider evidence of multiple conditions; (2) the ALJ failed to account for episodic limitations based on Plaintiff's combined medical and mental conditions; and (3) the Appeals Council improperly failed to consider new evidence that Plaintiff submitted after the ALJ's

decision. Defendant argues that the ALJ's decision is based on substantial evidence. For the following reasons, Defendant's arguments are convincing.

15.     Plaintiff first argues that the ALJ failed to adequately discuss evidence related to Plaintiff's carpal tunnel syndrome, knee osteoarthritis, and cardiac conditions. The ALJ did not find these to be severe conditions, finding that the record does not show that these impairments have caused more than minimal limitation in the ability to perform basic work activities for 12 consecutive months. (R. at 372.) Plaintiff argues that evidence of these conditions in the record make the ALJ's finding erroneous.

16.     An impairment or combination of impairments is "severe" at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). In contrast, an impairment is "not severe" if the medical evidence clearly establishes it has no more "than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); accord SSR 96-3p, 1996 WL 374181, at *1-2 (July 2, 1996); see also James C. v. Comm'r of Soc. Sec., 2020 WL 103813, at *4 (D. Vt. Jan. 9, 2020) ("An impairment is 'not severe' when medical evidence establishes 'only a slight abnormality ... [,] which would have no more than a minimal effect on [the claimant's] ability to work.' ") (alterations in original) (quoting SSR 85-28, 1985 WL 56856, at *3).

17.     "The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe." Tanner v. Comm'r of Soc. Sec., No. 515CV577TJMATB, 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016), report and recommendation adopted, No. 515CV577TJMATB, 2016 WL 3190227 (N.D.N.Y. June 7, 2016) (citing Hamilton v. Astrue, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y.

Sept. 30, 2013).  See also McConnell v. Astrue, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) ("The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe.") (quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995)). "Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months." 20 C.F.R. § 404.1509. "It is the [Plaintiff's] burden to show at step two that [s]he has a 'severe' impairment or combination of impairments[.]" James C., 2020 WL 103813, at *4.

18.     This Court does not find that the ALJ erred in not finding carpal tunnel syndrome, knee issues, or cardiac issues to be severe impairments because there is no evidence that they caused more than minimal limitations, or that they lasted continuously for twelve months.

19.     Regarding carpal tunnel syndrome, the record shows that Plaintiff complained of numbness and tingling in both hands on July 1, 2016. (R. at 118.) On July 9, 2016, Plaintiff had imaging done on her right wrist, which was "unremarkable." (R. at 718.) Doppler testing on her right wrist was negative for deep vein thrombosis. (R. at 719.) The record does not show testing for Tinel's sign, Phalen's maneuver, or nerve conduction studies. On October 17, 2016, nurse practitioner Meggan Shea added carpal tunnel syndrome to Plaintiff's diagnosis list and stated in a treatment note that neurontin had helped decrease Plaintiff's "CTS symptoms." (R. at 114.) On February 10, 2017, consultative medical examiner Dr. John Schwab stated that Plaintiff cooked and cleaned every day, and enjoyed reading and doing puzzles, among other things. (R. at 1259.)  He

observed that Plaintiff had 5/5 strength in both upper and lower extremities. (R. at 1261.) Plaintiff's hand dexterity was intact, and her grip strength was 5/5. (Id.) He opined that Plaintiff had no physical restrictions. (Id.)

20.     As to Plaintiff's claim of knee osteoarthritis, the record shows that Plaintiff complained of right knee pain and had a mild antalgic gait on June 7, 2016. (R. at 685-86.) The physician's assistant who saw her that day noted a "positive X ray." (R. at 685.) Plaintiff was prescribed physical therapy, ibuprofen, ice, and raising her knee. (Id.) At other office visits, Plaintiff did not mention her knee, nor was she treated for it. On October 17, 2016, Plaintiff was treated for a spider bite, carpal tunnel syndrome, HTN, and GERD. (R. at 1295-97). On June 22, 2018, treatment notes describe a heart murmur, HLD, and GERD. (R. at 1283-85.) On November 29, 2018, treatment notes describe a heart murmur, HLD, history PE, GERD. (R. at 1280-81). On January 8, 2019, she was treated for ear pain. (R. at 1277-79.) At his examination on February 10, 2017, Dr. Schwab noted that Plaintiff had a normal gait and stance, did not use assistive devices, and had no trouble getting onto the exam table. (R. at 1260.) Her knees had full range of motion. (R. at 1261.)

21.     As to Plaintiff's cardiac condition, the record contains testing, and some diagnoses, related to Plaintiff's cardiac condition, but no evidence that it affected her functioning. Plaintiff argues that she was diagnosed with and treated for cardiac conditions "for years," and it is true that the record contains frequent mentions of heart murmurs and instructions for Plaintiff to get an echocardiogram done. For example, on February 20, 2018, Plaintiff stated that she had always had a heart murmur, but denied chest pain, shortness of breath, and dizziness. (R. at 1286, also 103.) An echocardiogram

from December 11, 2018, found a normal sinus rhythm, and a normal ventricle and atrium, but moderate to severe aortic stenosis and moderate aortic valve regurgitation. (R. at 1298.) Plaintiff argues, based on this result, that "it is reasonable that Plaintiff's long-term heart conditions may cause limiting effects." (Docket No. 16-1 at p. 20.) But Plaintiff points to no evidence of any cardiac symptoms, how they limited her, or any way she was treated for them.

22.     In the case of carpal tunnel syndrome, knee osteoarthritis, and cardiac conditions, test results alone, or symptoms alone, are not enough to establish a severe impairment. To be severe, an impairment must affect the ability of a claimant to function for 12 consecutive months. It is the Plaintiff's burden to present evidence of disabling condition. Here, there is simply no evidence in the record that any of these issues—carpal tunnel syndrome, knee osteoarthritis, or cardiac issues—significantly limited Plaintiff's ability to function for one year. Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human Servs., 360 Fed. Appx. 240, 243 (2d Cir. 2010) (summary order). The ALJ's severity finding is thus supported by substantial evidence.

23.     Plaintiff next argues that the ALJ failed to take into account "episodic limitations based on Plaintiff's combined medical and mental conditions." (Docket No. 16-1 at p. 2.) She appears to argue that the combination of her mental impairments and cardiac conditions contributed to a shortness of breath and racing heart during panic attacks, which limited her ability to function. As an initial matter, while Plaintiff cites to pages 737-823 and 1238 in the record for evidence of these panic attacks, page 1238 is a duplicate of page 756, which in turn is an assessment from December 2015, before the relevant period here. On December 23, 2015, a year before her alleged onset date,

9

Plaintiff reported regular panic attacks, triggered by anxiety, which led to shortness of breath.  (R. at 756.) On a disability questionnaire from January 2017, Plaintiff reported– in response to a question about anxiety—that typical panic attacks included shortness of breath and a rapid heartbeat. (R. at 566). But a review of the record from the relevant period shows that in her mental health treatment, Plaintiff's regular issue was not panic or anxiety, but depression and auditory hallucinations. Plaintiff regularly heard voices telling her to kill herself, but, at the same time, she regularly told treatment providers that she was able to disregard these voices. (See, e.g., R. at 740, 742, 744, 748, 749, 750, 752, 756, 769, 781, 788, 796—denying symptoms of anxiety, 805, 815, 820.) The treatment notes Plaintiff cites to simply do not contain evidence of debilitating panic attacks nor any suggestion that any anxiety she experienced was clinically linked to symptoms of her aortic stenosis.  In any event, the RFC limited Plaintiff to low-stress jobs, simple instructions and tasks, no quotas, and only minimal changes in routine. Even if anxiety triggered panic attacks that compounded shortness of breath, this restrictive RFC accounts for Plaintiff's anxiety.

24.     Plaintiff finally argues that the Appeals Council erred in disallowing evidence Plaintiff submitted after the ALJ issued its decision.  "Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council *must* consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." Hollinsworth v. Colvin, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016) (emphasis added). "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez v. Chater, 77 F.3d 41, 45 (2d Cir.

1996). "If the Appeals Council fails to fulfill its obligations under [section] 416.1470(b), 'the proper course for the reviewing court is to remand [to the ALJ] for reconsideration in light of the new evidence.'" Hollinsworth, 2016 WL 5844298, at *3 (citing McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010)).

25.     Evidence is new "if it did not exist prior to the ALJ's decision and is not cumulative of what is already in the record." Anthony P.B. v. Comm'r of Soc. Sec., 2021 WL 288769, at *3 (W.D.N.Y. Jan. 28, 2021) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (summary order)). "Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." King v. Comm'r of Soc. Sec., 2020 WL 5248473, at *1 (W.D.N.Y. Sept. 2, 2020) (citing Webb v. Apfel, 2000 WL 1269733, at *14 *W.D.N.Y. Feb. 8, 2000) (citing Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991)).

26.     As an initial matter, some of the allegedly new material Plaintiff submitted to the AC was duplicative of material already in the record. It was not error for the AC to decline to exhibit or consider this evidence. (See R. at 1.)

27.     The AC also declined to exhibit evidence from Medical Care of WNY (2015-19), Sisters Hospital, Breast Health, and Horizon (March 2017-April 2018), finding that it did not show a reasonable probability that it would change the outcome of the decision. Plaintiff argues primarily that evidence of cardiac testing in 2018 makes erroneous the ALJ's finding that her cardiac issues were not severe impairments. The new evidence Plaintiff submitted were two echocardiogram results from February and March 2018. The February 2018 reading showed "sinus rhythm with occasional ventricular premature

11

complexes, and nonspecific T-wave abnormality; compared to a 2015 ECG ventricular premature complex and T-wave abnormality." (R. at 156-58.) The March 2018 reading showed moderate to severe aortic regurgitation, moderate to severe aortic stenosis, mild mitral valve regurgitation, and moderate thickening aortic stenosis. (R. at 159-60.)

28.     Plaintiff argues that the echocardiogram results are highly probative and would have undermined key aspects of the ALJ's decision. But neither report provides an assessment of Plaintiff's functioning and thus neither supports a finding that her cardiac issues were severe. Nor do they appear necessarily different from the result of the December 11, 2018, echocardiogram discussed above. Further, the record does contain evidence of Plaintiff denying heart symptoms. In an office note dated June 22, 2018, Nurse Practitioner Meggan Shea observed that Plaintiff "has not had echocardiogram yet, no symptoms noted." (R. at 1283.) Similarly, office notes from May 13, June 13, and September 19, 2019 (from visits after the ALJ's decision) note the diagnosis of aortic regurgitation with stenosis, but do not mention cardiac symptoms Plaintiff experienced or treatment for this issue. (See R. at 11-14, 86-90.) This Court finds it significant that another piece of evidence Plaintiff argues is new and material, the medical status report by nurse practitioner Meggan Shea, does not mention any cardiac issues among Plaintiff's impairments. This Court finds there is not a reasonable probability that this new evidence would lead to a different outcome, and the AC therefore did not err.

29.     The other new evidence Plaintiff submits was created after the ALJ's May 28, 2019, decision. It consists of physical therapist treatment notes for knee pain, notes of complaints of wrist pain and treatment, notes of Plaintiff's complaints memory problems, and a medical source statement by nurse practitioner Meggan Shea. Some of

12

this is raw medical evidence that Plaintiff complained of certain symptoms, and does not provide any evidence of how severe the examiners considered the conditions, or how these conditions would affect Plaintiff's functioning. Further, it is not clear that observations made later in 2019 reflect plaintiff's functioning before the ALJ's May 2019 decision.

30.    In a medical source statement created on September 26, 2019, nurse practitioner Meggan Shea stated that Plaintiff's diagnoses are right knee OA (osteoarthritis), carpal tunnel syndrome, and memory loss. (R. at 359.) When asked for symptoms, clinical findings, and objective signs, and treatment of Plaintiff, Shea wrote, "see attached." No attachment is visible with this document. Nothing in this form suggests that it refers to Plaintiff's functioning during the relevant period. As stated above, the AC must consider evidence that "relates to the period on or before the ALJ's decision." Hollinsworth v. Colvin, 2016 WL 5844298, at *3. The AC therefore did not err in not considering this opinion.

31.    It is Plaintiff's burden [to prove that she is disabled within the meaning of the Act. Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (citing Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted)). Here, Plaintiff has not met this burden. She does not submit new evidence of how any of her impairments affected her functioning, or that they lasted for 12 consecutive months. In his decision, the ALJ found that Plaintiff's carpal tunnel, knee problems, and cardiac issues did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities for twelve consecutive months. (R. at 372.) Even if the AC had admitted all of the new evidence Plaintiff submitted after the ALJ's decision, dating from both before and

after the ALJ's decision, this Court does not find that there is reasonable probability that it would have changed the outcome of the ALJ's decision. See 20 C.F.R. § 416.1470(a)(5); see also Barrere v. Saul, No. 20-1102-CV, 2021 WL 1590047, at *2 (2d Cir. Apr. 23, 2021).

32.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        September 2, 2021
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

14